IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TODD VALENTINE, an individual | ) | FILED: APRIL 16, 2008 |
| | ) | 08CV2172         TC |
| Plaintiffs, | ) | |
| v. | ) No. | JUDGE ASPEN |
| | ) | MAGISTRATE JUDGE SCHENKIER |
| ABBELL CREDIT CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Todd Valentine, by his undersigned attorneys, complains of defendant Abbell Credit Corporation ("ACC") as follows:

### Parties

1. Todd Valentine is an individual, who currently resides in, and is a citizen of, the State of Maine.

2. ACC is an Illinois corporation, with its principal place of business located in Chicago, Illinois.

### Jurisdiction and Venue

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(2) in that it is a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that ACC resides in this district and a substantial portion of the events giving rise to this claim took place in this district.

## General Allegations

5. In 2005, Mr. Valentine was employed by ACC and was referred to as ACC's Chief Operating Officer.

6. At that time Mr. Valentine was married to Elizabeth Holland, who is and was at all relevant times hereto, an owner and was referred to as the Chief Executive Officer of ACC.

7. In November, 2005, Mr. Valentine and Ms. Holland separated and filed for a divorce.

8. In November of 2005, ACC was acting as the management company for the redevelopment of a shopping center located in Toledo, Ohio. ACC was, and is, owned by Ms. Holland, her brother, Ethan Holland, and her mother, Louise Holland, among others. The shopping center was owned by Westgate Village Shopping Center, an Illinois limited partnership ("WVSC"). ACC, Ms. Holland, Ethan Holland, and Louise Holland each own partnership units in WVSC. Costco had agreed, once the redevelopment project was complete, to purchase 13.24 acres of the existing 21.39 acre shopping center, on which Costco would then build a new store.

9. In November of 2005, Mr. Valentine was heavily involved in the redevelopment project for WVSC. However, due to his relationship with Ms. Holland, he was planning on terminating his employment with ACC.

10. Ms. Holland, in December, 2005, approached Mr. Valentine and asked that he continue his employment with ACC until the Land as delivered to Costco. In return for continuing his employment, ACC offered to pay Mr. Valentine, upon closing of

the sale of the land to Costco, a bonus equal to two percent (2%) of the estimated redeveloped value of the WVSC shopping center, in addition to his normal salary.

11. Mr. Valentine accepted that proposal, continued to work for ACC and to work on the WVSC through delivery of the land to Costco.

12. In May, 2007, ACC provided an estimated redeveloped value to the auditors for inclusion in the 2006 WVSC financial report. That estimated value was $34,000,000.

13. On March 28, 2007, the sale of the land to Costco for $5.5 million was closed. Five months after that closing and two months after Mr. Valentine left ACC, ACC paid Mr. Valentine $110,000 (or 2% of the price paid by Costco) of his $680,000 bonus. ACC continues to refuse to pay Mr. Valentine the remaining $570,000 that is currently due.

14. Mr. Valentine has demanded payment of the remainder of the bonus that is due and ACC has refused.

**Count I**
**(Violation of the Illinois Wage Payment Ac)**

15. Mr. Valentine incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 14 of this complaint.

16. Mr. Valentine was, at all times relevant hereto, an employee of ACC as that term is defined under the Illinois Wage Payment Act ("IWPA"), 820 ILCS 115/1 et seq.

17. Pursuant to Section 5 of the IWPA, 820 ILCS 115/5, ACC was obligated to pay Valentine his "final compensation" by the next regularly scheduled payday following the termination of Mr. Valentine's employment.

18. Pursuant to Section 2 of the IWPA, "final compensation" includes earned bonuses.

19. In violation of the IWPA, ACC failed to pay Mr. Valentine $570,000 of his earned bonus by the next payday following the termination of Mr. Valentine's employment.

20. By letter dated April 7, 2008, Mr. Valentine demanded payment of his bonus, but ACC refused, and continues to refuse, to pay that bonus.

21. As a result of ACC's violation of the IWPA, Mr. Valentine has suffered damages in the amount of $570,000, plus pre-judgment interest.

22. In addition, Mr. Valentine, pursuant to 705 ILCS 225/1, is entitled to recover his reasonable attorneys' fees incurred in this matter.

WHEREFORE, Mr. Valentine requests that this Court enter judgment in his favor and against ACC awarding Mr. Valentine:

A. Damages in the amount of $570,000;

B. Pre-judgment interest, in an amount to be determined at the time of the entry of the judgment;

C. His attorneys' fees incurred in pursuing this matter;

D. His costs and expenses incurred in this matter; and

E. Such other relief as this Court deems just.

### Count II
### (Breach of Contract)

23. Mr. Valentine incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 14 of this complaint.

24. Pursuant to the agreement between Mr. Valentine and ACC, ACC agreed to pay Mr. Valentine a bonus equal to two percent (2%) of the estimated redeveloped value of the WVSC project upon closing of the sale of the land to Costco.

25. The sale of the land to Costco closed on March 28, 2007.

26. The estimated redeveloped value of the project at that time was $34,000,000.

27. Pursuant to the agreement, ACC was obligated to pay Mr. Valentine a bonus equal to $680,000 on or before June 1, 2007.

28. ACC has paid $110,000 of the bonus. However, ACC, in breach of its obligation under the agreement, has failed to pay the remaining $570,000 of the bonus due Mr. Valentine.

29. As direct and proximate result of that breach, Mr. Valentine has suffered damages in the amount of $570,000.

30. In addition, Mr. Valentine is entitled to pre-judgment interest from the date this Court determines the bonus was due until the entry of judgment in this matter.

31. In addition, because the bonus was part of the wages to be paid by ACC to Mr. Valentine, ACC was obligated to withhold appropriate taxes, and to pay the employer's share of the Medicare and Social Security taxes due.

32. Rather than paying the $110,000, which was part of the bonus as wages, ACC simply sent a check to Mr. Valentine for the gross amount, with no withholding, thereby requiring Mr. Valentine to pay both the employee and employer portions of the Medicare and social security taxes.

33. As direct and proximate result of ACC's failure to pay the $110,000 as wages Mr. Valentine has suffered damages in the amount of $4372.

34. Mr. Valentine has performed all of his obligations under his contract with ACC.

WHEREFORE, Mr. Valentine requests that this Court enter judgment in his favor and against ACC awarding Mr. Valentine:

A. Damages in the amount of $574,372;

B. Pre-judgment interest, in an amount to be determined at the time of the entry of the judgment;

C. His costs and expenses incurred in this matter; and

D. Such other relief as this Court deems just.

## JURY DEMAND

Plaintiff demand trial by jury of the claims set forth in this Complaint.

    Respectfully submitted,
    TODD VALENTINE

    By:   /S/ John M. Heaphy
           One of his Attorneys

John M. Heaphy
George N. Vurdelja, Jr.
Harrison & Held
333 W. Wacker Drive, Suite 1700
Chicago, IL 60606
(312) 753-6160