IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TODD VALENTINE, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | No.  08 CV 2172 |
| | ) | |
| ABBELL CREDIT CORPORATION, | ) | Judge Aspen |
| | ) | Magistrate Judge Schenkier |
| Defendant. | ) | |

## ANSWER TO COMPLAINT,
## ADDITIONAL DEFENSES and
## COUNTERCLAIM

Defendant ABBELL CREDIT CORPORATION (hereinafter "Abbell" or Defendant) by

and through its attorneys Kevin R. Sido and Renee C. Choy of Hinshaw & Culbertson LLP

responds to Plaintiff's Complaint as follows:

### ANSWER

#### Parties

1.      Todd Valentine is an individual, who currently resides in, and is a citizen of, the

State of Maine.

**ANSWER:  Upon information and belief the allegations in Paragraph 1 are correct.**

2.      ACC is an Illinois corporation, with its principal place of business located in

Chicago, Illinois.

**ANSWER:    The allegations in Paragraph 2 are correct.**

## Jurisdiction and Venue

3.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) in that it is a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:    The allegations in Paragraph 3 are correct.**

4.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that ACC resides in this district and a substantial portion of the events giving rise to this claim took place in this district.

**ANSWER:    The allegations in Paragraph 4 are correct.**

## General Allegations

5.    In 2005, Mr. Valentine was employed by ACC and was referred to as ACC's Chief Operating Officer.

**ANSWER:    The allegations in Paragraph 5 are correct.**

6.    At that time Mr. Valentine was married to Elizabeth Holland, who is and was at all relevant times hereto, an owner and was referred to as the Chief Executive Officer of ACC.

**ANSWER:    Todd Valentine and Elizabeth Holland became separated and estranged in July 2005 and Mr. Valentine moved out of the marital household in November 2005.  Abbell admits that Elizabeth Holland is and was at all relevant times hereto an owner of a portion of Abbell Credit and was referred to as the Chief Executive Officer of Abbell.  Defendant denies any other allegations in Paragraph 6.**

2

7.    In November, 2005, Mr. Valentine and Ms. Holland separated and filed for a divorce.

**ANSWER:   In November, 2005 Mr. Valentine and Ms. Holland physically separated their residences and their finances, following which Mr. Valentine filed his petition seeking a divorce, judgment upon which was entered in April 2006.  Defendant denies any other allegations in Paragraph 7.**

8.    In November of 2005, ACC was acting as the management company for the redevelopment of a shopping center located in Toledo, Ohio. ACC was, and is, owned by Ms. Holland, her brother, Ethan Holland, and her mother, Louise Holland, among others. The shopping center was owned by Westgate Village Shopping Center, an Illinois limited partnership ("WVSC"). ACC, Ms. Holland, Ethan Holland, and Louise Holland each own partnership units in WVSC. Costco had agreed, once the redevelopment project was complete, to purchase 13.24 cres of the existing 21.39 acre shopping center, on which Costco would then build a new store.

**ANSWER:   Abbell agrees that in November of 2005, Abbell was acting as the management company for the redevelopment of a shopping center located in Toledo, Ohio. Abbell is principally owned by a trust of which Louise Holland is the trustee and beneficiary; Elizabeth Holland and her brother Ethan Holland own the remaining interest in Abbell.  Abbell agrees that the certain shopping center was owned by Westgate Village Shopping Center, an Illinois limited partnership ("WVSC").  Abbell agrees that Elizabeth Holland, Ethan Holland, and Louise Holland each own partnership units in WVSC.  Abbell states that Costco agreed on or about December 22, 2005 to purchase approximately 13**

6318502v1 880387

acres of the existing shopping center (of approximately 21 acres) on which Costco planned to build a new store. Abbell denies any other allegations in Paragraph 8.

9.    In November of 2005, Mr. Valentine was heavily involved in the redevelopment project for WVSC. However, duc to his relationship with Ms. Holland, he was planning on terminating his employment with ACC.

**ANSWER:    Abbell agrees that in November 2005 Mr. Valentine was involved in the redevelopment project for WVSC on behalf of Abbell, but in further answering Abbell states that it does not have suffcent knowledge as to Mr. Valentine's plans and therefore denies all other allegations of Paragraph 9.**

10.    Ms. Holland, in December, 2005, approached Mr. Valentine and asked that he continue his employment with ACC until the Land was delivered to Costco. In return for continuing his employment, ACC offered to pay Mr. Valentine, upon closing of the sale of the land to Costco, a bonus equal to two percent (2%) of the estimated redeveloped value of the WVSC shopping center, in addition to his normal salary.

**ANSWER:    Abbell denies the allegation that "Ms. Holland, in December, 2005, approached Mr. Valentine and asked that he continue his employment with ACC until the Land was delivered to Costco." Further answering, Abbell categorically denies offering Mr. Valentine a bonus (in addition to his then salary) equal to any percentage of the *estimated* redeveloped value of the entire shopping center, much less as triggered upon the closing of a sale for only a portion of the shopping center (i.e., the sale to Costco). Abbell offered to Mr. Valentine a sum equal to 40% of Abbell's 5% fee from WVSC and payable**

only once Abbell's fee could be calculated and Abbell itself was paid; Abbell's own fee was to be 5% of the *actual* redeveloped value as measured by an arms-length sale of the shopping center or a portion thereof and/or the *actual* refinancing of the shopping center. Abbell (and thus, derivatively, Mr. Valentine) was to be paid only upon the happening of the actual events (sale and/or refinancing) and estimated values had no effect whatsoever on the calculation of any fee. Defendant denies any other allegations in Paragraph 10.

11.     Mr. Valentine accepted that proposal, continued to work for ACC and to work on the WVSC through delivery of the land to Costco.

**ANSWER:    Abbell denies that the allegations in Paragraph 11 correctly state any proposal made to Mr. Valentine. Abbell further answers that Mr. Valentine did continue to draw his salary and perform certain functions thereafter in furtherance of the proposal Abbell offered to him, namely, a sum equal to 40% of Abbell's 5% fee from WVSC and payable only once Abbell itself was paid. Defendant denies any other allegations in Paragraph 11.**

12.     In May, 2007, ACC provided an estimated redeveloped value to the auditors for inclusion in the 2006 WVSC financial report. That estimated value was $34,000,000.

**ANSWER:    In approximately March 2007 and not May, Abbell provided an estimated redeveloped value in response to the request of the WVSC auditor and in compliance with what Abbell understood to be GAAP principles. The estimated value was simply for accounting purposes for the books and records of WVSC (and not Abbell). As Abbell understood the auditor's need, since Abbell's fee was capped at $1,800,000, the**

auditor needed to reflect what an Abbell fee exposure to WVSC might be, per GAAP requirements so that that amount could be accrued in its estimated form on Westgate Village Shopping Center's financial statements. The estimated value at that moment in time had no relationship whatsoever to the calculation of an actual fee ultimately to be paid to Abbell (and thus derivatively to Mr. Valentine). Abbell agrees that the estimated value shown by the auditors on the books of WVSC was $34 million at that time in early 2007. Defendant denies any other allegations in Paragraph 12.

13.     On March 28, 2007, the sale of the land to Costco for $5.5 million was closed. Five months after that closing and two months after Mr. Valentine left ACC, ACC paid Mr. Valentine $110,000 (or 2% of the price paid by Costco) of his $680,000 bonus. ACC continues to refuse to pay Mr. Valentine the remaining $570,000 that is currently due.

**ANSWER:    In July 2007 Mr. Valentine first insisted he then receive his bonus; theretofore, he had made no demand. Abbell admits paying Mr. Valentine $110,000 as of August 2007 but same was computed as Mr. Valentine's 40% share of the 5% due Abbell upon the closing of the sale with Costco (and not as "2% of the price paid by Costco"). Abbell states that it has not paid Mr. Valentine further sums as nothing is yet due until further events occur. Mr. Valentine is simply not owed now the sum of $570,000. Defendant denies any other allegations in Paragraph 13.**

14.     Mr. Valentine has demanded payment of the remainder of the bonus that is due and ACC has refused.

6

**ANSWER:  Mr. Valentine through counsel has continued to wrongfully demand a bonus that is not yet due.  Defendant denies any other allegations in Paragraph 14.**

### Count I
### (Violation of the Illinois Wage Payment Act)

15.     Mr. Valentine incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 14 of this complaint.

**ANSWER:   Abbell does similarly incorporate by reference its answers to the allegations of paragraphs 1 through 14 of the complaint, as if its answers were fully set forth verbatim herein.**

16.     Mr. Valentine was, at all times relevant hereto, an employee of ACC as that term is defined under the Illinois Wage Payment Act ("IWPA"), 820 ILCS 115/1 et seq.

**ANSWER:   The allegations of this paragraph are legal conclusions and thus, for that reason, Abbell denies same; further answering, in any event, Abbell denies Mr. Valentine was an "employee" at "all times relevant hereto."**

17.     Pursuant to Section 5 of the IWPA, 820ILCS 115/5, ACC was obligated to pay Valentine his "final compensation" by the next regularly scheduled payday following the termination of Mr. Valentine's employment.

**ANSWER:   The allegations of this paragraph are legal conclusions and thus, for that reason, Abbell denies same.  Further answering, Abbell denies any current or past obligation to pay any sums to Mr. Valentine that have not already been paid.**

6318502v1 880387

18.    Pursuant to Section 2 of the IWPA, "final compensation" includes earned bonuses.

**ANSWER:    The allegations of this paragraph are legal conclusions and thus, for that reason, Abbell denies same.  Further answering, Abbell states that Mr. Valentine has not earned any bonuses which have not been paid or wrongfully not paid.**

19.    In violation of the IWPA, ACC failed to pay Mr. Valentine $570,000 of his earned bonus by the next payday following the termination of Mr. Valentine's employment.

**ANSWER:    The allegations of this paragraph are legal conclusions and thus, for that reason, Abbell denies same.  Further answering, Abbell states that it has no obligation to pay Mr. Valentine $570,000 or any other amount until the occurrence of the triggering events, at which time the sum to be paid to Mr. Valentine will be determined.**

20.    By letter dated April 7, 2008, Mr. Valentine demanded payment of his bonus, but ACC refused, and continues to refuse, to pay that bonus.

**ANSWER:    Mr. Valentine through counsel has continued to wrongfully demand a bonus that is not yet due.  Defendant denies any other allegations in Paragraph 20.**

21.    As a result of ACC's violation of the IWPA, Mr. Valentine has suffered damages in the amount of $570,000, plus pre-judgment interest.

6318502v1 880387

**ANSWER:   Abbell denies each and every allegation in Paragraph 21 and specifically further denies that Mr. Valentine is entitled to pre-judgment interest whatsoever.**

22.     In addition, Mr. Valentine, pursuant to 705 ILCS 225/1, is entitled to recover his reasonable attorneys' fees incurred in this matter.

**ANSWER:   The allegations of this paragraph are legal conclusions and thus, for that reason, Abbell denies same.  Abbell denies any obligation to Mr. Valentine given the current circumstances and thus totally denies any liability for attorneys' fees incurred in this matter.**

**Count II**
**(Breach of Contract)**

23.     Mr. Valentine incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 14 of this complaint.

**ANSWER:   Abbell does similarly incorporate by reference its answers to the allegations of paragraphs 1 through 14 of the complaint, as if its answers were fully set forth verbatim herein.**

24.     Pursuant to the agreement between Mr. Valentine and ACC, ACC agreed to pay Mr. Valentine a bonus equal to two percent (2%) of the estimated redeveloped value of the WVSC project upon closing of the sale of the land to Costco.

**ANSWER:   Abbell denies each and every allegation in paragraph 24.  Abbell restates its Answer set forth previously in paragraph 10 that Abbell offered to Mr. Valentine a sum equal to 40% of Abbell's 5% fee from WVSC and payable only once**

9

Abbell's fee could be calculated and Abbell itself was paid; Abbell's own fee was to be 5% of the *actual* redeveloped value as measured by an arms-length sale of the shopping center or the *actual* refinancing of the shopping center. Abbell (and thus derivatively Mr. Valentine) was to be paid only upon the happening of the actual events (sale or refinancing) and estimated values had no effect whatsoever on the calculation of any fee. Defendant denies any other allegations in Paragraph 24.

25.    The sale of the land to Costco closed on March 28, 2007.

**ANSWER:    Defendant admits the allegations in Paragraph 25.**

26.    The estimated redeveloped value of the project at that time was $34,000,000.

**ANSWER:    Defendant denies the allegations in Paragraph 26 and in further answering denies that the "estimated redeveloped value" has any relevancy regarding any agreement between Abbell and Mr. Valentine.**

27.    Pursuant to the agreement, ACC was obligated to pay Mr. Valentine a bonus equal to $680,000 on or before June 1, 2007.

**ANSWER:    Defendant denies the allegations in Paragraph 27.**

28.    ACC has paid $110,000 of the bonus. However, ACC, in breach of its obligation under the agreement, has failed to pay the remaining $570,000 of the bonus due Mr. Valentine.

6318502v1 880387

**ANSWER:    Abbell admits it paid $110,000 to Mr. Valentine in  keeping with its
agreement to pay 40% of Abbell's 5% bonus for that portion which had sold (i.e., the
Costco portion).  Defendant admits it has not paid any other sum because none is due and
thus Defendant Abbell denies all other allegations in Paragraph 28.**

29.    As direct and proximate result of that breach, Mr. Valentine has suffered damages
in the amount of $570,000.

**ANSWER:    Defendant denies all allegations of Paragraph 29.**

30.    In addition, Mr. Valentine is entitled to pre-judgment interest from the date this
Court determines the bonus was due until the entry of judgment in this matter.

**ANSWER:    Defendant denies all allegations of Paragraph 30 and further denies
that there is any substantive right to any pre-judgment interest here.**

31.    In addition, because the bonus was part of the wages to be paid by ACC to Mr.
Valentine, ACC was obligated to withhold appropriate taxes, and to pay the employer's share of
the Medicare and Social Security taxes due.

**ANSWER:    Defendant denies all allegations of Paragraph 31.**

32.    Rather than paying the $110,000, which was part of the bonus as wages, ACC
simply sent a check to Mr. Valentine for the gross amount, with no withholding, thereby
requiring Mr. Valentine to pay both the employee and employer portions of the Medicare and
social security taxes.

11

ANSWER:    Abbell admits sending a check for $110,000 to Mr. Valentine in August 2007 but denies all other allegations of Paragraph 32.  Further answering, Abbell states that neither Mr. Valentine nor his then counsel nor present counsel have expressed any objection or demand regarding Medicare or social security taxes, or the purported lack of withholding, at any time until the allegation in this Complaint.  As of the date the check was sent, Mr. Valentine was no longer an employee in any sense and thus he was issued a "1099" form for the payment he was issued.

33.    As direct and proximate result of ACC's failure to pay the $110,000 as wages Mr. Valentine has suffered damages in the amount of $4372.

ANSWER:    Defendant denies all allegations of Paragraph 33.

34.    Mr. Valentine has performed all of his obligations under his contract with ACC.

ANSWER:    Defendant denies all allegations of Paragraph 34. In particular, Mr. Valentine failed to fulfill duties he owed Abbell in that (a) he failed to obtain a reimbursement in excess of $500,000 from the municipality in which WVSC was located (Toledo, Ohio) for sewer work Abbell caused to be performed; (b) he failed or refused to perform a reconciliation of common area maintenance charges to retail tenants at the Merle Hay Mall; and (c) he failed to adequately supervise the reconstruction of the Shopping Center.

## ADDITIONAL DEFENSES

Defendant Abbell Credit Corporation for its Additional Defenses states as follows:

6318502v1 880387

1.      Plaintiff has waived any claim regarding the purported failure to withhold Medicare or social security taxes or any other taxes or the like by the acceptance and negotiating of the $110,000 check issued him in August 2007.  Under the doctrine of accord and satisfaction, Plaintiff is barred from asserting any claim for sums not withheld.

2.      Plaintiff fails to state a claim for any pre-judgment interest under Illinois law.

3.      Pleading in the alternative, Plaintiff's purported oral agreement fails under the Illinois Statute of Frauds,  740 ILCS 80/1, to the extent that it could not have been completed in one year.

4.      Plaintiff is estopped to assert his theory of the "bonus" much less a bonus for $570,000 given his participation in numerous meetings on behalf of Abbell where he was involved in the negotiation and determination of the circumstances under which Abbell (and thus ultimately he) would receive compensation from the owners of WVSC.

5.      Plaintiff has failed to state a claim for relief insofar as he has accepted and negotiated the check from Abbell for $110,000 representing a sum owed to him under the formula whereby he would receive monies only upon the occurrence of an actual sale (as in the case of Costco) or an actual refinancing.  Plaintiff's conduct in his acceptance of the check with the accompanying letter of August 23, 2007 to his then counsel amounts to an accord and satisfaction that any sums due him would be paid exactly as Abbell has stated the formula:  Mr. Valentine would get 40% of Abbell's 5% fee from its client WVSC only upon the occurrence of an actual sale or an actual refinancing, neither of which has occurred at this point.  Plaintiff is now estopped from claiming any other formula for payment.

13

6.      Pleading in the alternative, Abbell states that Plaintiff never had a contractual relationship with WVSC and thus his assertion or claim of a "bonus" under a formula whereby his bonus was to be calculated on the actions of only WVSC fails to state a claim for relief to be granted.  Since Abbell itself, whom Mr. Valentine alleges in Paragraph 16 to have been his employer, was the only entity to whom WVSC was to pay any fee, then Mr. Valentine's monies were only derivative of Abbell's own fee.  Further, apart from the Costco sale, WVSC has paid no fee to Abbell; therefore, Mr. Valentine is owed no sums at this time.

7.      Abbell further states that the General Partners of WVSC resolved in a certain Resolution dated January 8, 2007 (see two page Resolution attached) that the 5% fee to Abbell would be payable ". . .upon the earlier to occur of (i) a sale of the Shopping Center; or (ii) a mortgage loan taken following the conclusion of the reconstruction of the new Shopping Center."  Mr. Valentine was present at the meeting of the General Partners as a representative of Abbell on said date and was certainly aware of the unanimous action taken by the General Partners of WVSC.  At a minimum, Mr. Valentine is estopped to assert any different theory given (a) the action of WVSC regarding Abbell and (b) his presence there as an agent of Abbell.  He holds no right to receive any sums that would make him superior to the very entity that he claims was his employer and through whom any would-be bonuses would be paid.

8.      Plaintiff's claim for a money judgment is premature and not ripe until the events stated in the certain Resolution have occurred and Abbell is paid its fee by WVSC.

6318502v1 880387

## COUNTERCLAIM

1.      Todd Valentine was assigned certain duties in his employment with Abbell. In particular, those duties included, *inter alia*, obtaining reimbursement from the municipality in which WVSC was located (Toledo, Ohio) for sewer work Abbell caused to be performed; performing a reconciliation of common area maintenance charges to retail tenants at the Merle Hay Mall; and supervising the reconstruction of the Shopping Center.

2.      Mr. Valentine either failed to perform altogether those duties or otherwise did not adequately perform same, thus causing damages to Abbell.

3.      The damages to Abbell consist of the value of lost services of those who had to perform the duties that Mr. Valentine did not perform; further, due to Mr. Valentine's failure to properly supervise the reconstruction of the Shopping Center Abbell has incurred expenses and damages. Abbell continues to face an exposure to damages arising from defective construction at the Shopping Center.

Therefore, the Counterplaintiff Abbell Credit Corporation demands judgment against Todd Valentine for an amount in excess of $100,000 or as the evidence will show, plus costs.

### Jury Demand

Plaintiff has demanded a trial by jury. Should he waive that in the future, Abbell reserves its right to demand same.

6318502v1 880387

ABBELL CREDIT CORPORATION

By: __s/s  Kevin R. Sido_____
            Its Attorney

Kevin R. Sido
Renee C. Choy
Hinshaw & Culbertson LLP
Attorneys for Defendant
222 North LaSalle Street Suite 300
Chicago, Illinois 60601
312-704-3333

16

6318502v1 880387

KRSido/8880387

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

TODD VALENTINE, an individual    )
    )
    Plaintiff,    )
    )
-v-    )    No.  08 CV 2172
    )
ABBELL CREDIT CORPORATION,    )    Judge Aspen
    )    Magistrate Judge Schenkier
    Defendant.    )

**NOTICE OF FILING**

To:    John M. Heaphy
    George N. Vurdelja, Jr.
    Harrison & Held
    333 West Wacker Drive
    Suite 1700
    Chicago, Illinois 60606

    PLEASE TAKE NOTICE that on May 15, 2008 there was filed with the Clerk of the U.S. District Court for the Eastern Division Defendant's Answer to Complaint, Additional Defenses and Counterclaim, a copy of which is certified as being served upon you.

    Hinshaw & Culbertson LLP

    By: _Kevin R. Sido_

Kevin R. Sido
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601
312-704-3000

6319353v1 880387

## CERTIFICATE OF SERVICE

I certify that on the 15th day of May, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.  I further certify that a copy of this document was sent via U.S. Postal Service addressed to:

John M. Heaphy, Esq.
George N. Vurdelja, Jr., Esq.
Harrison & Held
333 West Wacker Drive
Suite 1700
Chicago, Illinois 60606

_Charmaine Schreib_
Charmaine Schreib

6319353v1 880387